IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| CRYSTAL LYNN BOUCHER, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> ANDREW M. SAUL ) <br> Commissioner of Social ) <br> Security ) <br> ) <br> Defendant. ) | Case No. 4:19-CV-00501-MDH |

## ORDER

Before the Court is a proceeding under Title II of the Social Security Act, 42 U.S.C. 401 et seq. Plaintiff requests review of the Administrative Law Judge's ("ALJ") decision dated 12/04/2018, which denied Plaintiff disability insurance benefits. After carefully reviewing the record, the Court **AFFIRMS** the ALJ decision in part and **REVERSES** and **REMANDS** in part.

## PROCEDURAL HISTORY

This case arises from the below ALJ's decision on remand from this Court. Pursuant to the remand order, the ALJ was directed to provide a function-by-function analysis of claimant's work-related functioning, and reconsider the medical opinion of claimant's treating physician Dr. Cantrell, specifically explaining why the prior ALJ decision gave less weight to the opinion of Dr. Cantrell than the opinion of consultative examining physician Dr. Mukherjee. The ALJ was also directed to offer claimant the opportunity for a hearing, address the additional evidence submitted, and take any further action needed to complete the administrative record. Claimant appeared and testified at hearings held on May 1, 2018 and September 17, 2018. Dr. Stephen Kaplan, an impartial medical expert, and Amy L. Salva, an impartial vocational expert, also appeared at the September 17, 2018 hearing.

1

# BACKGROUND

The ALJ below determined that the Plaintiff has not been under a disability within the meaning of the Social Security Act (the "Act") from Plaintiff's alleged disability onset date of February 1, 2013 through the date of the ALJ's decision. The ALJ found that Plaintiff has the following severe impairments: obesity, fibromyalgia, affective disorder, and anxiety disorder. While Plaintiff has a history of leukocytoclastic angitis and vasculitis, the ALJ relied on the testimony of medical expert Dr. Kaplan to conclude that these impairments were severe, and perhaps disabling for several months, but resolved within twelve months and therefore do not meet the durational requirements of the Act.

The ALJ further found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R Part 404, Subpart P, Appendix 1. The ALJ concluded that Plaintiff has a moderate limitation with regard to concentrating, persisting, or maintaining pace. The ALJ found that the "paragraph B" criteria are not satisfied, nor are the "paragraph C" criteria.

Per the District Court's order, the ALJ completed a function-by-function analysis of Plaintiff's residual functional capacity ("RFC") and found that Plaintiff has the RFC to perform a range of sedentary work, including being able to lift and carry 20 pounds occasionally and 10 pounds frequently, stand and walk 2 of 8 hours, and sit at least 6 of 8 hours so long as she is allowed to stand every 1-2 hours for 5 minutes. Furthermore, the ALJ found that Plaintiff should never climb ladder, ropes, and scaffolds, and she must avoid all exposure to hazards including unprotected heights and moving machinery. The ALJ found that Plaintiff can occasionally climb ramps and stairs, can never stoop, crouch, crawl, or kneel; can occasionally bend at the waist, and has sufficient balance to walk. The ALJ also found that Plaintiff can understand, remember, and

carry out simple routine repetitive tasks, applying like information with no more than occasional changes in routine; make simple decision; and can have occasional, superficial interaction with coworkers and supervisors but no contact with the general public.

In considering Plaintiff's age, education, work experience, and RFC, the ALJ concluded that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. The vocational expert ("VE") testified that a hypothetical person with Plaintiff's limitations would be able to perform the requirements of representative occupations such as document scanner (DOT #249.587-018), circuit board assembler (DOT #726.684-110), and packager (DOT #559.687-014).

## STATEMENT OF THE ISSUES

Plaintiff argues that the ALJ's conclusion that Plaintiff was not under a disability as defined by the Act at any time through December 4, 2018 is not supported by the substantial evidence nor based upon correct legal standards. Specifically, the issues before the Court are: (1) whether substantial evidence supports the ALJ's assessment of Plaintiff's mental RFC; (2) whether substantial evidence supports the ALJ's assessment of Plaintiff's physical RFC; and (3) whether substantial evidence supports the ALJ's finding that Plaintiff could perform "other work" that existed in significant numbers in the national economy.

## STANDARD

Judicial review of the Commissioner's decision is a limited inquiry into whether substantial evidence supports the findings of the Commissioner and whether the correct legal standards were applied. *See* 42 U.S.C. §§ 405(g), 1383(c)(1)(B)(ii)(3). Substantial evidence is less than a preponderance of the evidence and requires enough evidence to allow a reasonable person to find adequate support for the Commissioner's conclusion. *Richardson v. Perales*, 402

U.S. 389, 401 (1971); *Freeman v. Apfel*, 208 F.3d 687, 690 (8th Cir. 2000). This standard requires a court to consider both the evidence that supports the Commissioner's decision and the evidence that detracts from it. *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008). That the reviewing court would come to a different conclusion is not a sufficient basis for reversal. *Wiese v. Astrue*, 552 F.3d 728, 730 (8th Cir. 2009). Rather, "[i]f, after review, we find it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, we must affirm the denial of benefits." *Id.* (quoting *Mapes v. Chater*, 82 F.3d 259, 262 (8th Cir. 1996)). Courts "defer heavily to the findings and conclusions of the Social Security Administration" and will disturb the Commissioner's decision only if it falls outside the "zone of choice." *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010); *Casey v. Astrue*, 503 F.3d 687, 691 (8th Cir. 2007). Incorrect application of a legal standard is grounds reversal, *Ford v. Heckler*, 754 F.2d 792 (8th Cir. 1985), but the Court defers to the ALJ's determinations of the credibility of witness testimony, as long as the ALJ's determinations are supported by good reasons and substantial evidence. *Pelkey v. Barnhart,* 433 F.3d 575, 578 (8th Cir. 2006). Finally, while a deficiency in opinion writing is not enough to merit reversal where it has no practical effect on the outcome, incomplete analyses, inaccuracies, and unresolved conflicts of evidence may be a basis for remand. *Reeder v. Apfel*, 213 F.3d 984, 988 (8th Cir. 2000).

## DISCUSSION

### I. The ALJ's assessment of Plaintiff's mental RFC

Plaintiff argues that the ALJ's assessment of Plaintiff's mental RFC is not supported by substantial evidence and should be reversed and remanded. The Court disagrees and finds that the ALJ's decision is supported by substantial evidence and therefore is affirmed. Plaintiff argues that although the ALJ found moderate limitations in concentration, persistence, or pace, she failed

to include limitations in the RFC on Plaintiff's ability to complete tasks in a timely manner. (Plaintiff's Brief, 6).

Plaintiff cites several cases that required remand based on an ALJ's failure to consider a claimant's deficiencies in concentration, persistence, or pace. *See, e.g., Porter v. Colvin,* Case No. 4:14-cv-00813-NKL, Doc. 17 (W.D. Mo. June 22, 2015); *Newton v. Chater*, 92 F.3d 688 (8th Cir. 1996); *Logan-Wilson v. Colvin*, Case No. 4:13-cv-1119-JAR, 2014 WL 4681459, at *6 (E.D. Mo. Sept. 19, 2014). As noted by the Commissioner, however, the ALJ here did find moderate limitations in evaluation "paragraph B" factors, but she was not required to include any limitations on Plaintiff's ability to complete tasks in a timely manner in the mental RFC. This was explicitly noted by the ALJ, given that the limitations identified in the "paragraph B" criteria are used only to rate the severity of mental impairments at steps two and three of the evaluation process and are not in and of themselves an RFC assessment. (Tr. 908-09).

The ALJ here founds that the record supported Plaintiff's limitation to work that involved understanding, remembering, and carrying out simple routine tasks, applying like information with no more than occasional changes in routine, and making simple decision. (Tr. 909). Such limitations have been repeatedly confirmed as valid for a finding of moderate limitation on concentrating, persisting, or maintaining pace. *See, e.g., Barnes v. Astrue*, 2012 WL 37497, at *11 (W.D. Mo. Jan. 9, 2012); *Davidson v. Astrue*, 578 F.3d 838 (8th Cir. 2009); *Pearl v. Berryhill*, Case. No. 17-01000-cv-w-ODS, 2018 WL 3642447, at *2 (W.D. Mo. Aug. 1, 2018).

The ALJ gave partial weight to the opinions of Dr. Jeffrey Meyer, a treating physician, as to Plaintiff's mental functional limitations. Specifically, Plaintiff takes issue with the fact that the ALJ rejected the portion of Dr. Meyer's opinions that identified marked limitations in performing activities within a schedule, maintaining regular attendance, and being punctual within customary

5

Case 4:19-cv-00501-MDH   Document 18   Filed 09/10/20   Page 5 of 13

tolerance as inconsistent with other evidence in the record. (Tr. 915). In making her assessment, the ALJ considered the Dr. Kaplan's testimony in light of the underlying treatment and evaluation of evidence and found his opinion and observation to be fully supported. (Tr. 911-12). The ALJ gave significant weight to the medical expert that Plaintiff might have concentration problems due to physical impairments. The ALJ also found that limitations relating to Plaintiff's ability to complete tasks in a timely manner were not supported by the record. The ALJ, in rejecting those limitations, noted that such limitations were not supported by the evidence, particularly Plaintiff's Function Report and nearly normal mental status examinations. (Tr. 915). The ALJ was not required to include such limitations in the RFC because she found that the limitations were not supported by the record. (Tr. 915). *See Blackburn v. Colvin*, 761 F.3d 853, 860-61 (8th Cir. 2014).

The ALJ cited to Dr. Meyer's own mental status examination notes that showed cooperative behavior, good eye contact, normal thinking, and the ability to focus. (Tr. 2562-67). Examination findings from other doctors undermine Dr. Meyer's conclusions as well. For example, Dr. Rosbrough concluded that Plaintiff has appropriate eye contact, linear and goal-directed though processes, and normal attention and concentration. (Tr. 1955-85). During medical examinations in September 2016, Plaintiff was alert, cooperative, in good disposition, and able to answer all questions; and had normal recent and remote memory and normal attention and concentration. (Tr. 2125, 2033-34). The ALJ also considered that Dr. Meyer's opinion of marked limitations was inconsistent with Plaintiff's Function Report. (Tr. 915). The ALJ properly cited to objective evidence in the record that was inconsistent with Dr. Meyer's opinion in order to discount Dr. Meyer's opinion. *See Winn. V. Comm'r, Soc. Sec. Admin.,* 894 F.3d 982, 987 (8th Cir. 2018).

While the ALJ was required to take Plaintiff's alleged limitations into account, she was not required to accept Plaintiff's subjective complaints without question. Rather, the ALJ here

properly exercised her discretion in assessing the consistency of Plaintiff's alleged limitations in light of other evidence in the record. 20 C.F.R. §§ 404.1529 and 416.929.

While the ALJ did not adopt any one medical opinion, she was not required to. *Stringer v. Berryhill*, 700 F. App'x 566, 567-68 (8th Cir. 2017) ("there is no requirement that RFC findings be supported by specific medical opinion"). While the ALJ gave partial weight to Dr. Meyer, and no weight to his opinion that Plaintiff had marked limitations in certain areas of function, this was proper, as the ALJ identified the reasons for doing so and those reasons were supported by objective evidence in the record. *See Turpin v. Colvin*, 750 F.3d 989, 994 (8th Cir. 2014) (the ALJ properly gave lesser weight to a treating physician opinion where it conflicted wit the medical records, the testimony of a medical expert, and Plaintiff's account of her daily activities). The Court therefore finds that the ALJ's assessment of Plaintiff's mental RFC is supported by substantial evidence and is affirmed.

## II. The ALJ's assessment of Plaintiff's physical RFC

Plaintiff contends that substantial evidence does not support the ALJ's assessment of Plaintiff's physical RFC. In its remand order, this Court instructed the ALJ to provide a function-by-function assessment of the RFC, state the inconsistencies that justify affording little weight to the treating physician's opinion, and to adequately identify the evidence in the record that supports Plaintiff's impairments. The Court finds that the ALJ's assessment of the physical RFC was satisfactory and supported by substantial evidence.

The ALJ enlisted the services of a medical expert—Dr. Kaplan—to aid the ALJ's assessment of Plaintiff's impairments. Plaintiff contends that Dr. Kaplan's opinions are not substantial evidence to support the ALJ's decision, because he is a non-examining, non-treating

7

State agency opinion, his testimony was internally inconsistent, and he ignored or overlooked impairments as well as evidence of edema. (Plaintiff's Brief, 11-13).

Dr. Kaplan was able to review all available medical records, as well as listen to Plaintiff's live testimony at the hearing. He had also been provided with a recording of Plaintiff's prior administrative hearing testimony. In offering his function-by-function assessment of Plaintiff's RFC, he identified specific evidence in the record that supported such conclusions, and the ALJ cited to some of that evidence in her decision. (Tr. 909-15). While Plaintiff argues that ALJ overlooked evidence related to Plaintiff's edema, the ALJ's decision makes it clear that she is citing to only particular examples of the medical evidence, and not to every occurrence in the record. (Tr. 911). This is appropriate. *See Chaney v. Colvin*, 812 F.3d 672, 678 (8th Cir. 2016) (the ALJ's failure to cite a specific piece of evidence does not mean that it was not considered.).

The ALJ adequately considered evidence of Plaintiff's edema. The ALJ cited Dr. Kaplan's opinion that Plaintiff's angina showed duration for less than one year and found that the ambiguities in the record contributed to the uncertainty regarding the duration of the condition and because a lack of medical substantiation that the condition remained severe for 12 months (Tr. 910). The ALJ also adequately addressed the Plaintiff's diabetes and low back pain, despite Plaintiff's argument to the contrary. Dr. Kaplan testified that Plaintiff would have no limitations in her ability to use or hands or arms (Tr. 1384), and the ALJ found that Plaintiff's diabetes had not caused complication that limited functioning and was therefore non-severe. (Tr. 907). Dr. Kaplan discussed that Plaintiff had complaints and limitations related to her lower extremities (Tr. 1385), and the ALJ found that due to pain and obesity, Plaintiff was limited to sedentary work only. (Tr. 914).

Plaintiff argues that, because the ALJ afforded little weight to the opinions of treating physician, Dr. Cantrell, the opinions of the non-examining, non-treating physician Dr. Kaplan cannot be substantial evidence to support the ALJ's assessment. (Plaintiff's Brief, 12). The ALJ properly relied on the inconsistencies in Dr. Cantrell's opinion identified by Dr. Kaplan to afford little weight to the opinion. (Tr. 915). The ALJ noted that Dr. Kaplan had the opportunity to analyze the "greatly expanded records," that Dr. Kaplan opined that Plaintiff's impairments were controlled or amenable to control, and that Dr. Kaplan's observation that Dr. Cantrell's opinions of severely limited functioning were appropriate only during periods of serious symptoms, namely when Plaintiff was dealing with angitis, which the evidence showed eventually resolved. (Tr. 915). Thus, it is incorrect to suggest, as the Plaintiff does, that the ALJ rejected Dr. Cantrell's opinion in its entirety. While the Plaintiff clearly disagrees with the conclusions of the ALJ and the ALJ's reliance on Dr. Kaplan's opinion, this is insufficient to warrant remand. *See Twyford v. Comm'r, Soc. Sec. Admin.*, 929 F.3d 512, 518 (8th Cir. 2019). This Court finds that the ALJ's assessment of Plaintiff's physical RFC is supported by substantial evidence and is affirmed.

### III. The ALJ's finding that Plaintiff could perform "other work" that existed in significant numbers in the national economy

The ALJ, relying on the testimony of a VE, found that Plaintiff could perform the jobs of document scanner (DOT #249.587-018), circuit board assembler (DOT #726.684-110), and packager (DOT 559.687-014). (Tr. 971, 1401, 1402). Plaintiff argues that the ALJ's determination that Plaintiff can perform "other work" in satisfaction of step five should be reversed and remanded (Plaintiff's Brief, 3). The Court agrees.

First, the Plaintiff argues that, because the ALJ precluded Plaintiff from exposure to hazards (Tr. 909), Plaintiff cannot perform any of the jobs identified. (Plaintiff's Brief, 3). The job of document scanner requires the use of a paper cutter or razor knife. The job of circuit board

9

assembler requires the use of a wire cutter and soldering iron. The job of ampoule sealer requires the use of a Bunsen burner and hot glass. The Court agrees with the Commissioner that these are not "hazards" for purposes of the ALJ's assessment. (Defendant's Brief, 16). "Hazards," as defined by the *Selected Characteristics of Occupations* ("DOT"), include: moving mechanical parts of equipment, tools, or machinery; electrical shock; working in high, exposed places; exposure to radiation; working with explosives; and exposure to toxic, caustic chemicals. *See* SSA Program Operations Manual System DI 25015.020. The DOT descriptions of the jobs identified by the VE explicitly state that each of these hazards are "Not Present—Activity or condition does not exist." Plaintiff asks this Court to read into the ALJ's opinion an unsubstantiated lay interpretation of what constitutes a "hazard," which the Court declines to do. Thus, the VE's testimony is consistent with the DOT, and the representative jobs do not involve any exposure to hazards.

Second, Plaintiff argues that the VE's testimony—that there was other work she could perform despite the fact that she could never stoop—was inconsistent with SSR 96-9p. (Plaintiff's Brief, 5). Ruling 96-9p states that "a complete inability to stoop would significantly erode the unskilled sedentary occupational base and a finding that the individual is disabled would usually apply…" and "[c]onsultation with a vocational resource may be particularly useful for cases where the individual is limited to less than occasional stooping." SSR 96-9p. Here, the ALJ obtained vocational expert testimony to determine the impact of Plaintiff's preclusion from stooping on the unskilled sedentary occupational base. While it is true that a finding that the individual is disabled would "usually" apply, this was not the case here where the vocational expert was able to identify jobs that Plaintiff could perform. In all three jobs identified, stooping was "Not Present—Activity or condition does not exist." DOT, Document Preparer, Microfilming, 249.587-018, 1991 WL 672349; Touch-Up Screener, Printed Circuit Board Assembly, 726.684-110, 1991 WL 679616;

Ampoule Sealer, 559.687-014, 1991 WL 683782. The ALJ appropriately considered the VE's testimony and opinion regarding Plaintiff's stooping limitation in accord with SSR 96-9p.

Lastly, Plaintiff argues that this case must be remanded due to an inconsistency between the VE's testimony and the DOT regarding the job of document scanner (DOT #249.587-018). (Plaintiff's Brief, 2-3). The ALJ explicitly limited Plaintiff to repetitive work. (Tr. 909). The job of document scanner is not, however, identified as a repetitive job in the DOT and, in fact, specifically requires the ability to perform a variety of duties. The VE, then, has testified inconsistently with the DOT, and neither the VE nor the ALJ recognized the conflict. (Tr. 917). Accordingly, the ALJ did not resolve the conflict. This Court has held that an ALJ's failure to provide any explanation for the discrepancy between an explicit limitation and the requirements of jobs identified by the VE precludes affirmance. *McPheeters v. Astrue*, 2013 WL 523674, at *3 (W.D. Mo. Feb. 12, 2013) (citing *Jones v. Barnhart*, 315 F.3d 974, 979 (8th Cir. 2003) (noting "an ALJ cannot rely on expert testimony that conflicts with job classifications in the DOT unless there is evidence in the record to rebut those classifications.").

The facts of *McPheeters* are analogous to those in the present case. There, the ALJ's RFC excluded Plaintiff from performing jobs which "involve detailed tasks or detailed instructions." *McPheeters*, 2013 WL 523674 at *2. The ALJ posed a hypothetical to the VE which limited the Plaintiff to work that does not involve dealing with detailed tasks or instructions. *Id*. The VE identified three jobs, but two of which require reasoning skills that requires the ability to understand and carry out detailed instructions. *Id*. Importantly, as in this case, the ALJ in *McPheeters* did not recognize, resolve, or explain the conflict in his decision.

The Commissioner asks this Court to rely on *Welsh v. Colvin*, 765 F.3d 926, 930 (8th Cir. 2014), where the court held that "the failure to address any potential inconsistency between the

11

Case 4:19-cv-00501-MDH   Document 18   Filed 09/10/20   Page 11 of 13

RFC's limitation to simple, routine, repetitive work and the *DOT's* requirement of level three reasoning [such as that required by the document scanner job] does not require remand." *Welsh*, however, is easily distinguishable from this case. There, the ALJ questioned the VE about apparent inconsistencies between the VE's testimony and the relevant *DOT* job descriptions and explained his decision to credit the VE's testimony. *Id*. The Commissioner also cites to *Renfrow v. Astrue*, 496 F.3d 918 (8th Cir. 2007) for a similar proposition. In *Renfrow*, however, the facts are again quite different from those at hand. There, the court found that there was no actual conflict between the VE's testimony and the *DOT*, because the VE's testimony referred to broad categories that were inconsistent with the RFC limitations, but in actuality the jobs identified were narrower jobs within those categories which were consistent with the RFC limitations. *Id*. at 921.

The Commissioner further argues that remand is not required here because the jobs of circuit board assembler and packager exist in significant numbers in the national economy. (Defendant's Brief, 15). It is true that ALJ's may properly cite to fewer than three occupations if it is clear that the jobs exist in significant numbers with fewer occupations. *See* 20 C.F.R. §§ 404.1566(b) and 416.966(b). *See also Weiler v. Apfel*, 179 F.3d 1107, 1110-11 (8th Cir. 1999) (affirming the ALJ's decision and finding that even if the plaintiff could not perform the VE-identified jobs of deliverer, locker room attendant, or arcade attendant, he could perform the job of surveillance systems monitor, and the ALJ could reasonably find that 32,000 surveillance systems monitor jobs in the national economy constituted a significant number of jobs.). Plaintiff notes that *Weiler* was decided prior to the enactment of SSR 00-04p.

Plaintiff is further correct that for this Court to conclude that the ALJ found that the jobs of circuit board assembler and packager existed in significant numbers in the national economy would be to supply a factual finding that the ALJ herself did not make. The ALJ made no findings

12

regarding the validity of the two jobs in the absence of the job of document scanner. (Tr. 917). While this may be true, it is beyond the scope of the Court to make a finding of fact. *See McPheeters*, 2013 WL 523674 (declining to supply finding that other jobs existed in significant numbers). *See also May v. Astrue*, 2010 WL 3257848 *8 (W.D. Mo. 2010) ("A reviewing court may not uphold an agency decision based on reasons not articulated by the agency when the agency has failed to make a necessary determination of fact or policy."). In sum, because the ALJ did not recognize or resolve the inconsistency between the VE's testimony and the DOT with respect to the job of document scanner, the Court orders remand on this issue.

## CONCLUSION

With respect to the ALJ's assessment of Plaintiff's mental and physical RFC, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is hereby **AFFIRMED**. With respect to the ALJ's reliance on the vocational expert's testimony that Plaintiff can perform the job of document scanner, the Court finds that the ALJ erred and the ALJ's decision that Plaintiff can perform "other work" under step five is hereby **REVERSED** and **REMANDED**.

**IT IS SO ORDERED.**

Dated: September 10, 2020         /s/ Douglas Harpool
                                  **DOUGLAS HARPOOL**
                                  **United States District Judge**